# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

JEFFERY SWILLEY                                          CIVIL ACTION NO.:

VERSUS                                                          JUDGE

WARRIOR ENERGY SERVICES
CORPORATION F/D/B/A SPC RENTALS            MAGISTRATE JUDGE

JURY TRIAL

## COMPLAINT

This is a civil action for damages arising from employment discrimination on the basis of disability in violation of the Americans with Disabilities Act, as amended ("ADAAA").

### PARTIES

1.

Plaintiff is Jeffery Swilley ("Swilley" or "Plaintiff"), a person of the age of majority domiciled in Louisiana, and a former employee of the Defendant.

2.

Defendant is Warrior Energy Services Corporation, a Delaware corporation which did business in Minden, Louisiana, under the names "Superior Pressure Control" and "SPC."   At all times relevant herein, Warrior had more than 15 employees.  Warrior is an "employer" as that term is defined by the ADAAA.

## STATEMENT OF FACTS COMMON TO ALL CLAIMS

3.

Plaintiff was employed by Warrior Energy Services Corporation ("Warrior") as the general manager of Warrior's pressure control division, Superior Pressure Control ("SPC"). Plaintiff worked in SPC's Minden, Louisiana, facility.

4.

Plaintiff's claims arise from drug testing that occurred at the facility on July 6, 2015, and the employer's discriminatory actions against Plaintiff during and after the drug test.

5.

Warrior participates in employee drug testing consortiums and databases which require Warrior to have a Designated Employer Representative ("DER") to implement the drug testing policies of the consortiums and databases.

6.

On the morning of July 6, 2015, Warrior's DER  ordered all employees assigned to or dispatched from the Minden Louisiana location to report immediately to the kitchen / breakroom at the facility and there to submit samples of urine, breath and hair for drug testing.

7.

Warrior's DER had arranged for collection stations to be staged in the kitchen/breakroom area for the collection of samples of hair, urine and breath for drug-testing purposes.

8.

Approximately 40 or more  employees from the Minden facility were assembled in the small room for drug testing.  They were not allowed to leave that area until they had provided hair, breath

and urine samples for drug testing and completed paperwork requirements.

9.

The DER was present at the collection site and observed conditions that did not meet acceptable standards for the assurance of accurate sample identification and avoidance of sample contamination.

10.

The DER was trained in collection and testing procedures. The following deficiencies would have been obvious to him:

A.   The area in which the employees were confined was too small to permit accurate, orderly, and reliable collection of hair samples.

B.   Collection site personnel carelessly handled the collection of samples and the completion of paperwork.

C.   Employees stood almost shoulder-to-shoulder in the room as they waited in line for sample collection, creating confusion in sample identification;

D.   Collection site personnel discarded donor paperwork into an open container and engaged in other reckless handling of samples and paperwork.

E.   Employees providing breath and urine specimens had to pass back and forth through a narrow space next to the table where hair samples were being collected.  Persons trying to navigate the narrow passage frequently bumped the table, unsettling the paperwork and donor samples which collection site personnel had placed on the tabletop.

F.   Rather than focus on collection, the collection site workers engaged in conversation

while taking samples, distracting them from their duties;

G.     Employee custody and control identification forms were completed in full prior to sample collection.

H.     The hair sample collector was not following proper collection and identification practices.

I.     The hair sample collector was failing to verify the identity of the donors.

J.     The hair sample collector was failing to  clean or clear the scissors between donors.

K.     The hair sample collector was cutting hair samples into his palm rather than into the foil packet that accompanied the sample acquisition card.

L.     The hair sample collector was cutting  samples from more than one donor before placing the samples in a foil packet and acquisition card.

M.     The hair sample collector was placing hair samples from multiple donors on an unstable flat surface without donor identification then using his hand to sweep samples from the flat surface into foil packets.

N.     The hair sample collector was failing to  process collection from one donor to completion before cutting a sample from another donor.

O.     The hair sample collector was failing to devote the proper level of attention to the taking and labeling of samples to avoid cross-contamination and misidentification of samples.

P.     The hair sample collector was taking samples while distracted and under unacceptable collection conditions.

11.

Plaintiff's breath test report was negative.

12.

Plaintiff's urine test report was negative.

13.

Plaintiff's hair test report was positive.

14.

The positive hair test report was a false positive.

15.

The hair test lab analysis was incompatible with the urine test analysis. The positive report on the hair sample was the result of contamination and/or misidentification of Plaintiff's hair sample. The sample that resulted in a positive test report for Plaintiff was not Plaintiff's hair sample.

16.

Plaintiff had taken no substances that would have resulted in a valid positive drug test report. The positive drug test report for Plaintiff was false.

17.

The hair sample tested was positive for an unlawful substance but testing of the hair sample did not detect the prescription medication that Plaintiff takes daily.  The urine test had detected the daily medication, but had not detected the unlawful medication that was detected in the hair sample. Had both samples come from Swilley, they would both have detected the daily medication.  The fact that the hair test did not detect the daily medication establishes that the hair sample tested was not Swilley's hair sample.

18.

The misidentification and/or contamination of Plaintiff's hair sample and the resulting false report of a positive drug test were the direct result of extreme disorder and confusion at the collection site, the grossly negligent manner in which the sample had been collected.

19.

After the hair collection and before test result reports were received, Warrior employees complained about the chaotic conditions under which samples had been collected and about the irregular and questionable collection practices the hair collector had used.   The employees who complained also provided Warrior photographs and other evidence of improper collection procedures, all sufficient to place the employer on notice that positive test result reports would be inaccurate and unreliable.

20.

Warrior required Plaintiff to disclose to the DER and to a Warrior Vice President the prescription medication he was taking, as well as information tending to reveal health conditions. This information was communicated to the DER and Vice President to explain a presumptively positive test results report and with expectation that the information would be maintained by Warrior in confidence.

21.

Warrior's receipt of the presumptively positive (unverified ) test results, and Warrior's use of its DER and Vice President as intermediaries between the employee subject of the presumptive positive test and the MRO is a practice that permits the employer to use employee drug testing for the impermissible purpose of subjecting the employee to the employer's medical inquiry.

Page 6 of  11

22.

When Plaintiff was informed of the positive test report he immediately submitted to his employer, pursuant to its policies and procedures, a written denial of the positive test report results. He also participated with others in objecting to and complaining of the improper collection procedures and the collection site conditions.

23.

On or about July 15, 2015, Warrior terminated Plaintiff's employment because of a false perception of impairment.

24.

Warrior communicated, or caused to be communicated, a report to Vendor Employer Compliance Testing Organization ("VECTOR") and VECTOR's electronic database of employee test report results that Swilley had been tested for cause and a positive drug test results report had been received. The VECTOR database is accessible to VECTOR participants and VECTOR clients.

25.

Warrior also participates in drug testing consortiums and other drug test reporting databases that are accessible to Warrior's customers and to potential employers.   Warrior reported to the consortiums and other databases that Swilley had been tested for cause and a positive drug test results report had been received.

26.

Warrior's participation in contractual or other arrangements with contractor vendor consortium databases have  the effect of subjecting Swilley to discrimination based upon disability. Warrior's reporting that Swilley had been tested for cause, a defined term for these databases, despite

knowing that this was false, and Warrior's reporting of the positive hair test results, which Warrior knew to be an invalid results report, create for Swilley a false database record of the illegal use of drugs.   This false record has the effect of subjecting Swilley to employment discrimination based upon a history of substance abuse or upon the basis of being regarded as having a drug abuse problem that he does not have.

27.

The acts of employment discrimination caused Plaintiff injury.   The dismissal from employment caused him to lose wages, monetary incentives, and valuable benefits.  He also suffered extreme embarrassment and emotional distress.

COUNT I

DISABILITY DISCRIMINATION IN VIOLATION OF THE ADAAA

28.

Swilley is an individual with a disability, as that term is defined by the ADAAA.  He was qualified for his job position and he was performing the duties of his job.

29.

Swilley is an individual with a disability because his employer, Defendant Warrior, regarded him as having a physical and / or mental impairment. Defendant erroneously regarded Plaintiff as engaging in illegal use of drugs when Plaintiff was not doing so. Thus Plaintiff is a qualified individual with a disability pursuant to the ADAAA Rules of Construction, specifically 42 U.S.C. §12114(b)(3).

30.

Defendant Warrior discriminated against Plaintiff on the basis of disability in violation of

the Americans with Disabilities Act, as Amended, 42 U.S.C. section, 12001, et seq.

31.

Warrior discriminated against Swilley in violation of the ADAAA by regarding Swilley as disabled, as that term is defined by the ADAAA, and subjecting him to actions prohibited by the ADAAA and by terminating his employment because of the perception of impairment.

32.

Intentionally or recklessly disregarding Swilley's rights under the ADAAA, Warrior subjected Swilley to an employment drug testing collection process and drug testing procedure that Warrior knew to be flawed and which Warrior knew would not and did not render a valid and reliable test results report.  The collection and testing process to which Warrior subjected Swilley was so unreliable for the purpose of detecting employee illegal drug use that it could not qualify as a permissible employee "drug test" under the ADAAA.  The collection, testing, analysis and reporting procedures Warrior used were impermissible inquiries of a current employee.

33.

The other discriminatory actions to which Warrior subjected Swilley because of perceived impairment occurred before, during and after the drug test and include, but are not limited to, the following:

A.   Warrior classified Swilley in such a way as to limit or adversely affect his job status or employment status;

B.   Warrior participated in contractual or other arrangements with contractor vendor consortium databases that have  the effect of subjecting an individual to disability discrimination;

C.     Warrior used standards, criteria, or methods of administration of its policies which are not job-related and consistent with business necessity and have the effect of discriminating on the basis of disability.

D.     Warrior subjected Swilley to medical inquiries that were not job related and consistent with business necessity; and

E.     Warrior failed to maintain the confidentiality of Swilley's medical information.

F.     Warrior's drug testing arrangements required the MRO and / or laboratory to provide test analysis reports to Warrior, which Warrior's personnel were not qualified to interpret, but which they used to make health determinations about the employee.

34.

Warrior terminated Swilley's employment on the basis of disability and in violation of the Americans with Disabilities Act.

35.

Plaintiff filed a complaint of discrimination with the Equal Employment Opportunity Commission and has received a Notice of the Right to Sue.

36.

Warrior is liable to Swilley for back pay and benefits, the value of lost incentives and lost benefits and other economic injuries, compensatory damages, punitive damages, costs including expert witness fees and costs, and Swilley's costs and attorney's fees.

37.

Plaintiff requests a jury trial.

**WHEREFORE**, Plaintiff prays that his complaint be deemed good and sufficient and that upon the conclusion of all due proceedings that a judgment be entered against Warrior awarding Plaintiff lost wages and the value of lost benefits, compensation for lost future pay and other economic injury, compensatory damages for other injuries, as described in the complaint, punitive damages, plus costs of these proceedings, including expert witness fees and costs, attorney's fees where allowed by law,  pre-judgment interest from the date of judicial demand and post-judgment interest.   Plaintiff further requests all other legal and equitable relief to which Plaintiff may be entitled.

Respectfully submitted,

DOWNER, JONES, MARINO  & WILHITE, LLC

By:_____ /s/ Pamela R. Jones_____
      **Pamela R. Jones, Bar Roll No. 19640**
American Tower
401 Market Street, Suite 1250
Shreveport, Louisiana 71101
318-213-4444 Telephone
318-213-4445 Facsimile
pjones@dhw-law.com Email

**ATTORNEYS FOR JEFFERY SWILLEY**